# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| JOHN AND JANE DOE 1<br>as Next Friend of JANIE DOE 1, a Minor,<br><br>JOHN AND JANE DOE 2<br>as Next Friend of JANIE DOE 2, a Minor,<br><br>JOHN AND JANE DOE 3<br>as Next Friend of JANIE DOE 3, a Minor,<br><br>JOHN AND JANE DOE 4<br>as Next Friend of JANIE DOE 4, a Minor,<br><br>JOHN AND JANE DOE 5<br>as Next Friend of JANIE DOE 5, a Minor,<br><br>JOHN AND JANE DOE 6<br>as Next Friend of JANIE DOE 6, a Minor,<br><br>Plaintiffs,<br><br>vs.<br><br>ROCKWALL INDEPENDENT SCHOOL DISTRICT, a governmental unit, ASHLEY RANKIN, LINDY LEWIS and MOM AND DAD DOE, as Next Friend of JOHNNY DOE, a Minor,<br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Civil Action No.:**<br><br>**JURY DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW Plaintiffs, JOHN AND JANE DOE 1-6 ("Plaintiffs"), as Next Friend for

JANIE DOES 1-6, Minor Children, and files this original complaint, complaining of Defendant,

ROCKWALL INDEPENDENT SCHOOL DISTRICT ("the School District" or "RISD")

ASHLEY RANKIN ("RANKIN"), LINDY LEWIS ("LEWIS"), and MOM and DAD DOE, as Next Friend of JOHNNY DOE, a minor, and would respectfully show as follows:

## I.    INTRODUCTION

1.    This case is necessary because RISD, RANKIN, MOM and DAD DOE, failed in their legal duties to protect JANIE DOES 1-6 from repeated sexual abuse by another student in a way that was foreseeable and predictable.  Plaintiffs seek damages, injunctive relief and attorney fees from the School District.

## II.    PARTIES

2.    JOHN AND JANE DOE 1-6 are competent adults residing in Rockwall County, Texas. Janie Does 1-6 are their respective minor children, also residing in Rockwall County, Texas.

3.    Defendant Rockwall Independent School District ("RISD") is a state-chartered organization whose purpose is to govern the affairs of the public schools in the City of Heath, Rockwall County, Texas. RISD is responsible for the policies, practices, and customs of its schools, as well as the hiring, training, supervision, control, and discipline of its teachers, principals, and other personnel. RISD may be served with process by serving Linda Mitchell Duran, President of the Rockwall Independent School District, Board of Trustees, 1050 Williams Street, Rockwall, Texas 75087.

4.    Defendant, ASHLEY RANKIN, was at all times relevant herein a public-school teacher employed by RISD. RANKIN resides at 2301 Cortland Circle, Rowlett, Dallas County Texas 75088, and may be served there or wherever she may be found.

5.    Defendant, LINDY LEWIS, was at all times relevant herein was principal of Amy Parks Elementary School employed by RISD. LEWIS resides at 17836 FM 3486, Terrell, Kaufman County, Texas 75160, and may be served there or wherever she may be found.

6.    Defendants, MOM and DAD DOE, and their minor child, JOHNNY DOE, all reside in Heath, Rockwall County, and may be served at their home in Heath, Texas. The identity of MOM and DAD DOE and their address is known, but it is not being disclosed in this Complaint to protect the identify of minor defendant, JOHNNY DOE.

## III.    JURISDICTION AND VENUE

7.    This lawsuit asserts claims under 42 U.S.C. §1983, the 14th Amendment of the United States Constitution, and Title IX of the Education Amendments of 1972, 20 U.S.C. §1681. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. §1331. Additionally, the Court has supplemental jurisdiction over any state constitutional and statutory claims pursuant to 28 U.S.C. §1367.

8.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(b)(1) venue is proper in this Judicial District as at least one Defendant, ASHLEY RANKIN, resides in this District at the time of this filing.

## IV.    FACTS COMMON TO ALL CAUSES OF ACTION

### A.    Access to children at Amy Parks-Heath Elementary School

9.    At all relevant times, JANIE DOES 1-6 were attending the Amy Parks Elementary School located at 330 Laurence Drive, Rockwall, Texas 75032.

10.    JANIE DOES 1-6 were students in a kindergarten class under the instruction of Defendant ASHLEY RANKIN née Brown at Amy Parks-Heath Elementary school which was one of the most highly acclaimed elementary schools in North Texas at the time of the assaults. The

school is in the Rockwall Independent School District, a district that prides itself on having highly qualified staff and encompassing a close-knit community.

11.     According to the "Campus Improvement Plan" for 2021-2022, "Rockwall ISD is a close-knit community with an engaged teaching staff. Our parents are highly involved, active and supportive. Our primary ethnicity is white which makes up 81% of our population. 2.9% of our student population is economically disadvantaged." [1]

12.     "Many of our parents report they purchased a home in the area, or are staying in the neighborhood so their children can attend Amy Parks-Heath Elementary."[2]  In 2019, Amy Parks-Heath "earned an A rating."[3]

13.     The "School Process and Programs Summary" at Amy Parks-Heath Elementary provides valuable context: "At Amy Parks, all staff are highly qualified. Support systems for teachers include: campus instructional coach, instructional technology specialists, SAGE specialist, and ESI specialist. The campus leaderships team is engaged in analyzing data, identifying needs and next steps, and enlisting the support of campus staff. PLC meetings are held weekly/monthly. Leadership opportunities are encouraged on a variety of committees. Campus and district level curriculum support and resources are provided to support teachers in implementing district curriculum. We work to put systems in place to address all needs and areas. We utilize our team leaders to help make decisions, identify areas of need and improve school operations. We continually monitor, review, and change schedules to maximize learning time for all students. We work to address student needs by providing resources for intervention and time

---

[1] https://www.rockwallisd.com//cms/lib3/TX02215269/Centricity/Domain/434/Amy%20Parks-Heath%20Elementary%20Plan%202021-2022.pdf

[2] *Id*
[3] *Id*

for students to get additional needed help in identified areas." [4]  "Our campus has a reputation of high performance…. We are part of a strong community and in a district that is focused on student and teacher needs."[5]

14.    It is clear that Amy Parks Heath intends to persuade the public that the school is exceptional and that the students are protected and safe while in their custody.

15.    Despite this self-created persona, from January 2022 to April 2022, a 6th grade boy, JOHNNY DOE, was invited in to Defendant RANKIN's classroom and given ample access to sexually assault at least six kindergarten girls by both attempting and actually penetrating their female sexual organs with his finger. These acts happened in RANKIN'S kindergarten classroom at Amy Parks-Heath Elementary and were completely avoidable and foreseeable events made possible through reckless policy and programming decisions at the administrative level.

16.    RISD had knowledge of the risk that these events could transpire. In fact, the entire Texas Education system knows or foresees that placing an un-vetted, uncertified, pubescent boy into a room with kindergarten girls could carry significant risk—that's why no such program exists nor is it allowed by law.

17.    Access to children is limited by design. School campuses are meant to be secure. Teachers are meant to be certified. Administration is meant to be qualified. Tutoring and mentoring programs exist, but on extremely limited bases. There are no "free roaming" children or tutors contemplated by the Texas Education Code, Texas Administrative Code, the Texas Association of School Boards, School Board Rules, or the Family Code. Certainly, there is no mechanism for providing "tutoring" to kindergarteners *without their parents' knowledge or consent.*

---

[4] *Id*
[5] *Id* at 9

18.     Rockwall ISD, itself has specific procedures that prescribe the methodology to be employed for tutoring programs, which they are required to implement as part of the school's federal funding. [6]

19.     The Rockwall ISD School Board has many documents posted online. These include the Texas Association of School Board Rules, which detail the legal framework of each rule as well as the local version of the rule. The entirety of Title I, otherwise known as "No Child Left Behind Act" is hosted on the Rockwall ISD website.

20.     To obtain and maintain Federal Funding for the operation of the school, the School Board is required to follow the rules found in Title I. A key tenant of Title I, is who has access to children in school, and *when parents should be notified of the same*. For example:

•     As a condition of receiving assistance under Title I, Part A of the Elementary and Secondary Education Act (ESEA) (20 U.S.C. 6301 et seq.), a district shall, at the beginning of each school year, notify the parents of each student attending any school receiving such funds that the parents may request, and the district shall provide the parents on request (and in a timely manner), information regarding the professional qualifications of the student's classroom teachers, including, at a minimum, the following:

1.     Whether the student's teacher:

a.     Has met state qualification and licensing criteria for the grade levels and subject areas in which the teacher provides instruction;

b.     Is teaching under emergency or other provisional status through which state qualification or licensing criteria have been waived; and

c.     Is teaching in the field of discipline of the certification of the teacher.

---

[6] https://www.rockwallisd.com/cms/lib3/TX02215269/Centricity/Domain/130/2022-2023%20%20Rockwall%20ISD%20Student%20Handbook%20-%20Final.pdf

    2.        Whether the child is provided services by paraprofessionals and, if so, their qualifications.

*20 U.S.C. 6312(e)(1)(A)*

21.     In addition, Rockwall ISD is a "District of Innovation" which is a term of art used by the Texas Legislature to exempt the district from a teacher certification requirement pertaining to Career and Technical Instruction, which appears to be the only exception for a teacher certificate in the district. The "District of Innovation" also allows the school to be flexible on the school's first day or start date. Otherwise, the District of Innovation Handbook states:

•    "Rockwall ISD's mission is to inspire and develop the unique abilities of our children to become passionate learners, extraordinary citizens and authentic leaders of the 21st century by cultivating an engaging learning environment based on high standards and expectations in a culture of kindness and compassion.

•    "Many of the compliance rules and regulations that we have been required to meet have inhibited the expansion of the new culture of learning and achievement of our students. The exemptions we will be allowed by virtue of becoming designated as a "District of Innovation" will ensure further preparation of our students for their postsecondary pursuits and will enable innovation at all levels in scheduling, campus administration, and expansion of classroom instruction to include anytime-anywhere learning environments." [7]

22.     Specific rules exist as they relate to mentoring and tutoring. Both are detailed clearly in the Texas Association of School Boards documents hosted on the Rockwall ISD website. For example, mentoring by another student is only allowed if a background check has been

---

[7] https://www.rockwallisd.com/cms/lib3/TX02215269/Centricity/Domain/2115/Rockwall%20ISD%20-%20District%20of%20Innovation%20Plan%20new%20logo.pdf

consented to by the student and the student's family. The program goes through a Campus Liaison and the mentor's ***parent is contacted for permission*** for their child to be a mentor. Then the mentor is asked if they want to do the program.[8]

23.    Under the Texas Education Code "A District may provide a mentoring services program to students at risk of dropping out of school. A board may arrange for any public or nonprofit community based organization to come to the district's schools and implement the program. A board shall ***obtain the consent of a student's parent*** or guardian before allowing the student to participate in the program."[9]

24.    In the instant case, the parents were neither informed nor consulted about the perpetrator's access to their children. There were no consent forms or background checks. There were no papers in the take-home folders. The parents had no part in the perpetrator's access to their daughters. As such, the parents of JANIE DOES 1-6 did not have a chance to protect their children from the perpetrator. RISD took this from the parents.

25.    Furthermore, Tutorial Services are also proscribed by the Education Code and the School Board Rules: "Tutorial Services" – A district may provide "tutorial services" at district schools. If a district provides tutorial services, it shall require a student whose grade in a subject for a reporting period is lower than the equivalent of 70 on a scale of 100 to attend tutorials.[10] Tutor eligibility first requires that the person be an active or retired teacher.[11] Tutor prospects must fill out an application. The program is subject to oversight and reporting to the School Board. Here, the 6th grade perpetrator was not tutoring one-on-one based on an identified need. Instead, it was an unstructured, disorganized scenario engineered by the administration.

---

[8] https://www.rockwallisd.com/domain/56
[9] Education Code 29.089
[10] Education Code 29.084
[11] Education Code 33.913

26.    "Innovative Courses" is a term of art that relates to the authority of a School District to try new programs. The Districts cannot simply invent programs at their whim but rather, the programs must be vetted by the State Board of Education.[12]   Beekeeping and Barbering are two examples of approved "Innovative Courses" authorized by the State Board.[13] [14] The clear intention of these courses is to provide variety to students who are in higher grade levels.

27.    Certification and gatekeeping requirements are not implemented capriciously in Texas. Indeed, in the Texas Administrative Code, where Teachers are required to be certified, it is for these reasons:

- Section 249.5 - The purpose of this chapter is:

  - **(1)** to protect the safety and welfare of Texas schoolchildren and school personnel;

  - **(2)** to ensure educators and applicants are morally fit and worthy to instruct or to supervise the youth of the state;

  - **(3)** to regulate and to enforce the standards of conduct of educators and applicants;

The student's best interest is paramount, throughout all of these codes and rules. "Because the SBEC's primary duty is to safeguard the interests of Texas students, educator certification must be considered a privilege and not a right." [15]   "SBEC" stands for State Board of Educator Certification.

28.    The Texas Administrative Code goes on to say: "Administrators who hold Superintendent, Principal, or Mid-Management Administrator certificates issued by the SBEC

---

[12] https://tea.texas.gov/academics/learning-support-and-programs/innovative-courses
[13] *Id*
[14] *Id*
[15] 19 Tex. Admin. Code § 249.5

have, as a result of their actual or potential positions of authority over both students and other educators, have an even greater obligation to maintain good moral character than teachers and paraprofessionals. When an administrator's conduct demonstrates that the administrator lacks good moral character, is a negative role model to students, or does not possess the moral fitness necessary to be a certified educator as described in subparagraph (D) of this paragraph, the administrator may be subject to greater sanction than a teacher or paraprofessional would receive for the same conduct.[16] The instant tragedy is a systemic failure, not a one-off. This is a systemic failure at the fault of the administration.

### B. A Recipe for Harm

29.     Throughout the 2021-2022 school year, some 6th graders at Cain Middle School, were bussed from Amy Parks-Heath to Cain and then back again. In order to fill a "gap" in the students schedule, the Amy Parks-Heath administration decided that it was a good idea to release these 6th graders onto Kindergarten classrooms for short periods of time so that they can "help" the kindergartners with reading or math. Specifically, this setup was created by the principal, Defendant LINDY LEWIS.  There was no structured protocol nor plan.

30.     Prior to the sexual assault of minors JANIE DOES 1-6, based on Plaintiffs information and belief, MOM and DAD DOE called Amy Parks-Heath Elementary School, to inform them about their child's abnormal behavior at home.  Amy Parks-Heath Elementary School was aware of at least one disciplinary action involving JOHNNY DOE being aggressive with another student and appreciated the risk of allowing a dangerous and potentially volatile 6th grader to have access to vulnerable young girls on numerous occasions.

---

[16] *Id.*

31. The parents of the Plaintiff kindergarteners were never informed that a 6th grader had access to their children. Despite the many mechanisms for transmitting information, including daily folders, group messaging apparatus, emails and the like – neither the administration nor the district informed the kindergarten parents that a 6th grader was coming into the kindergarten classroom for any purpose. These parents were under the impression that their kids were safe in school, as they trusted RISD and relied on the representations of Amy Parks-Heath as being an exceptional campus.

32. After many months of this program proceeding, in April 2022, a brave kindergarten boy was so troubled by what he witnessed in his classroom that he told his father that an older kid had been touching his female kindergarten peers on their "bottoms." The boy's father emailed Defendant RANKIN that night, and asked that she call him immediately, which she did. During the conversation with the boy's father, Defendant Rankin was confused about who could have been the perpetrator and the little boy yelled from the background "it's the kid who helps us with math."

33. This brave boy did not tell RANKIN, because the teacher had a "Mickey Mouse" policy whereby she instructed the children not to bother her while she was wearing her "Mickey Mouse" ears. This is problematic, because the teacher has a duty to safeguard her students, rather than to shut herself off from them. Defendant RANKIN effectively stifled outcries and created an environment where the perpetrator had power over other kindergarten girls. The School further failed the children and Plaintiffs by allowing the teacher to wear "Mickey Mouse" ears, nullifying her ability to control her classroom.

34. This particular 6th grader was scary to the children and, at a minimum, unsettling to the teacher. Despite the pandemic being, for most things considered, in the past, this student

chose to wear a skull-face gaiter mask while on campus. A gaiter provides no true respiratory protection like a N95 or KN95 but instead gave a menacing appearance. His gaiter had a skull on it. Further, regardless of the weather, he wore a hoodie and cargo shorts. While he was scheduled by the School to come into the classroom daily, he often missed days to the point that often no one in administration knew where he was. There was no record of who was supposed to be where and when. There was no log or sign-in sheet. Many of the children didn't even know his name.

35.    The next morning, at school, RANKIN did not know how to proceed after being informed that some of her kindergartners had been touched on their bottoms, under her supervision. There was no protocol for next steps at Amy Parks-Heath elementary. Although she had no training and did not know what to do, RANKIN approached the little boy who reported to his father and he confirmed the events again to her.  RANKIN spoke to the kindergartner who had been reportedly touched and asked her what had happened. She reluctantly confirmed that she had been touched in her genital area by the 6th grade boy. She said it also happened to her friend, who RANKIN then spoke to and confirmed as another victim.

36.    Then the children reported two more little girls who had been touched. At this point, RANKIN paused her inquiry and decided she needed help. This was a large-scale, multi-victim sexual assault pattern and she needed help to determine next steps, since there was no protocol. She called the principal, LINDY LEWIS, and the assistant principal but they were unavailable, and remained unavailable for most of the morning, so RANKIN left a message of urgency with Allison Green around 8am, then contacted the School Counselor, Kristen Holder around 9:15 a.m.

37.    Kristen Holder knew this particular 6th grade boy. She had noticed over several months a behavioral change in him where he became increasing aggressive with other students to

on the school bus. RANKIN recalls Ms. Holder telling her that the boy's mother had even called her about his behavior changes.

38.     Several hours passed before the administration finally responded. Mark Speck, the Human Resources Director for RISD, directed Lindy Lewis and Kristen Holder to interview the perpetrator upon his return to campus—about a possible *criminal offense*. They did as instructed, and the perpetrator confirmed generally that he had been touching the Plaintiff kindergarten girls.

39.     Despite his admission and the outcries of now five little girls who had been touched by the 6th grade perpetrator, Mark Speck insisted that the perpetrator board the same bus home that day with some of the kindergarten girls that the sixth grader admitted to sexually assaulting. Kristen Holder was appalled at this response, understanding that the victim might take this act as a sign that the school did not believe her, among other things. Ms. Holder rearranged the children and the perpetrator on the bus so that they were not near each other, and watched the victim's fearful face at the bus drove away for the day. Upon information and belief, the perpetrator was also allowed back on campus for a picnic, where the kindergarten girls could be in attendance.

40.     Ultimately, four CPS reports, and possibly as many as six, were made regarding the 6th grade perpetrator that day.

**C. The Coverup at Amy Parks-Heath Elementary**

41.     Despite being an "A rated" school, Amy Parks-Heath had no protocol in place for a scenario such as this. In fact, RANKIN effectively had to create a protocol on her own as she reached out for help yet she only found closed doors. The principal, LEWIS, was unresponsive, allegedly being "on the other line" for hours, while the assistant principal was out of town. The school publicly boasts that the teachers have support and resources, yet they placed a new teacher in a kindergarten classroom with a "pop-in" 6th grade boy whose purpose was never fully clear.

RANKIN was forced to accept the perpetrator's presence in the kindergarten classroom, despite never being briefed or trained about what his purpose was in the classroom.

42.     Despite the fact that adult parents rely on the school's rating and reputation in their purchase of real-estate so that their children can attend this prestigious elementary school, the parents were not informed that this 6th grader had access to their children. In fact, the administration allowed the perpetrator to continue roaming freely even after RANKIN had sounded the alarm bells that she needed help.

43.     The little girls who made the outcry that morning, were left to pretend that everything was normal, with no acknowledgement from the school that these events transpired at all. These little girls did not choose to disclose sexual abuse but instead a brave young peer alerted his dad to the abuse. In all this time, they were not offered the comfort of their parents' voice or embrace, nor any professional counseling services. In fact, they were *denied* professional counseling services, and Kristen Holder, the school counselor, was directed not to speak to the children. Instead, they were left to internalize the "outing" in their own minds.

44.     Not only did RISD deny the children safety or support but RISD never briefed the families of these children on what had transpired. The school did not hold a "town hall" or any kind of forum for parents to ask questions or get answers for why this 6th grade perpetrator had access to their children in the first place. Only one email was sent out to a very limited number of kindergarten families.

45.     Mark Speck eventually called for ASHLEY RANKIN'S resignation. He effectively threatened her that she would not receive a recommendation letter or teach school again unless she did so. Whilst crying in front of Mark Speck, she agreed to resign. The school delayed execution of her recommendation letter, and she only obtained it after filing a grievance through an attorney.

46.     Also, at Mark Speck's direction, Ms. Holder was instructed to pretend as though nothing happened the next day at school. Though the school certainly could have used this tragedy as an opportunity to educate students and faculty about sexual abuse and reporting guidelines, the school instead chose to ignore the pattern of events and change nothing about their curriculum nor their protocols. Ms. Holder, having a background in counseling, was appalled at the school's handling of this tragedy. She resigned her post and found other employment.

47.     Further, the school did not make any attempt to locate additional victims. Upon information and belief, two additional kindergarten girls were forensically interviewed. These girls were discovered privately despite no effort or assistance of the administration. The administration swiftly stifled the outcry.

48.     To this day, Plaintiffs are unclear the total number of children abused by the 6th grade perpetrator. All that the Parents received from the school in response to learning that their child was sexually assaulted was the following letter from Defendant LEWIS:



## A Message From
## Amy Parks-Heath Elementary

May 2, 2022

Dear APHE Kindergarten Parents,

We continue to receive emails and I wanted to follow up with an update to address continued concerns. First, I want to assure you that the older student involved in this matter has not been on campus as of Friday, April 22, and while we cannot share additional details, I can assure you the student will not be returning to our campus.

Please do not hesitate to contact me directly if you have any questions. I want you to know that APHE and our District are firmly committed to student safety. We have taken this matter very seriously and continue to do so as we work with the proper authorities to investigate and further address this matter.

Sincerely,

APHE Principal Lindy Lewis

## V. NOTICE TO RISD HAS BEEN GIVEN

49.     Prior to bringing this action, Plaintiffs gave detailed and specific notice of their claims against RISD.

## VI.     CAUSES OF ACTION

### A.     Violations of 42 U.S.C. §1983

50.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations in each of the previous paragraphs.

51.     This claim is based on a Substantive Due Process violation in contravention of the Fourteenth Amendment to the U.S. Constitution pursuant to the 42 U.S.C. §1983. Violations of the Fourteenth Amendment by local government state actors create a cause of action under 42 U.S.C.§1983, which provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

52.     The U.S. Supreme Court held that Congress intended §1983 to apply to local government entities as well as to persons. *Monell vs. New York City Department of Social Services*, 436 U.S. 658, 691-694.

53.     In Texas, "schoolchildren [like JANIE DOES 1-6] have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right…" *Doe vs. Taylor Independent School District*, 15 F.3d 443, 445 (1994). As the Court stated in Taylor, "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse …" *Id*. at 451.

54.     Additionally, under the law, the RISD, RANKIN, and LEWIS are legally responsible for supervisory failures and failures to train that result in abuse if those failures manifest "callous disregard," or "deliberate indifference" to the constitutional rights of that child. *Id*. at 453. RISD has a broad obligation to supervise all its employees and has liability under Section 1983 for supervising (or in this case, failing to supervise) its employees in a manner that manifests callous disregard or deliberate indifference to the Constitutional rights of its students.

55.    The Fifth Circuit has held that supervisors can be liable for gross negligence or deliberate indifference to violations of their subordinates. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986 ). Further, the U.S. Supreme Court has held that municipalities are responsible under §1983 for the failure to train its employees that results in the violation of a plaintiff's right… *City of Canton v. Harris*, 489 U.S. 378, 381.

56.    Here, RISD, RANKIN, and LEWIS created an environment where JANIE DOES 1-6 could be sexually abused. RISD increased the danger that JANIE DOES 1-6 would be abused again by, among other things, facilitating this sham "program" whereby unvetted pubescent boys spend unsupervised time around kindergarten girls without any education-based reason, failing to train the Kindergarten teacher on signs and signals of abuse, placing an abused child on the same bus as her abuser; allowing the abuser to return to campus; allowing the abuser to attend a school picnic where JANIE DOES 1-6 would also be present.

57.    RISD is further liable to Plaintiffs under Section 1983 because RISD failed to train and supervise its personnel regarding how to properly react to a report of sexual abuse on one of its campuses. The depth of the lack of training and supervision is astounding in this modern day. The lack of training and supervision in this case rises to the level of callous disregard or deliberate indifference to FIVE six-year-old girls' right to be free from sexual abuse at school.

58.    Due to a combination of arrogance, callousness, lack of training and supervision, RISD personnel, including RANKIN and LEWIS, failed to appreciate the high level of probability that JANIE DOES 1-6's abuser would repeat the sexual abuse. Properly instructed, honest, and attentive RISD personnel could have prevented this tragedy. More importantly, RISD did not train its personnel or did not supervise its personnel in such a way that it would take steps to protect JANIE DOES 1-6, the victims. After the outcry, RISD personnel were so poorly trained and

supervised, they placed JANIE DOES 1-6 on the same bus as the student who molested them. RISD's actions have deprived JANIE DOES 1-6 of access to their education and an abuse free environment.

59.     RISD personnel further did not understand the importance of conducting a prompt investigation of the allegations. Nor did RISD personnel know to thoroughly document the incident. RISD Human Resources instructed untrained personnel interview the abuser regarding a criminal act--RISD did not train its personnel to utilize the resources around it to help JANIE DOES 1-6. RISD allowed its own staff to languish for hours, wallowing in the unknown, due to having no protocol or policy in place for reporting or investigating sexual abuse at school. For example, RISD did not train its personnel to immediately involve Child Protective Services. RISD only did so after several hours and circling the wagons.

60.     RISD further failed to create any organized plan to protect JANIE DOES 1-6. It followed no checklist; it followed no prescribed action plan. Rather, RISD ignored the event and acted as if it never happened, to cover it up.

61.     All these shameful facts illustrate LEWIS', RANKIN'S and RISD's callous disregard and deliberate indifference to JANIE DOES 1-6's fundamental right to be free from sexual abuse while attending a public elementary school. Rather than swift justice, understanding, cooperation, transparency, and willingness to change or enact new or updated procedures, RANKIN and RISD's actions shows a pattern of deliberate indifference with its stance.

62.     RANKIN'S, LEWIS' and RISD's actions have led directly to JANIE DOES 1-6 now facing severe emotional and mental trauma. As a result of the deprivation of Plaintiffs' and JANIE DOES 1-6's constitutional rights, Plaintiffs and JANIE DOES 1-6 suffered emotional and

physical injuries and suffered economic and noneconomic damages. Plaintiffs seek those damages in this case.

**B.  Violations of 20 U.S. C. § 1681 – Title IX**

63.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations in each of the previous paragraphs.

64.     United States Code Chapter 20, §1681, known as "Title IX," provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

65.     The implied right of action under Title IX supports a claim for monetary damages. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992).

66.     In this case, RISD, RANKIN, and LEWIS are liable for JANIE DOES 1-6's sexual abuse because school officials who had a duty to protect JANIE DOES 1-6 knew of the abuse and had the power to act to end the abuse but failed to do so. RISD did not take remedial action of any kind, even though RISD officials knew remedial action was necessary to protect JANIE DOES 1-6 from future abuse.

67.     Therefore, Plaintiffs allege that RISD, by and through the acts and omissions of its agents, including Speck, LEWIS, RANKIN, and others not yet identified, was deliberately and consciously indifferent to the sexual abuse suffered by JANIE DOES 1-6 all in violation of their rights pursuant to Title IX.

68.     In addition, and in the alternative, Plaintiffs further allege that the failures of RISD to have policies, procedures, practices, and customs in place to assure that JANIE DOES 1-6 were

not victims of sexual abuse, discrimination, and harassment violated their rights pursuant to Title IX.

69.     As a result of Plaintiffs' and JANIE DOES 1-6's deprivation of their rights under Title IX, Plaintiffs and JANIE DOES 1-6 suffered emotional and physical injuries and suffered economic and noneconomic damages. Plaintiffs seek those damages in this case.

**C. FRAUD BY NONDISCLOSURE AGAINST ROCKWALL ISD**

70.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations in each of the previous paragraphs.

71.     As plead additionally and in the alternative, RISD committed fraud by nondisclosure to Plaintiffs, which RISD is directly liable.

72.     Specifically, RISD concealed from or failed to disclose certain facts to the parents of JANIE DOES 1-6, including but not limited to the fact that RISD failed to conduct a background check on the sixth-grade perpetrator before allowing him to tutor and/or mentor JANIE DOES 1-6, and the fact that JANIE DOES 1-6, would be participating in a program with an undisclosed sixth grade helper.

73.     The Texas Association of School Boards only permits mentoring by another student under very specific circumstances, and only if a background check has been consented to by the student and the student's family. Rockwall ISD on its own website has a very similar policy, which states another student can only mentor a peer if the peer has a need, the program goes through a Campus Liaison, and the mentor's parent is contacted for permission for their child to be a mentor.

74.     In the present instance, the parents of JANIE DOES 1-6, were concealed from the fact that a program was taking place, and that there had been no background investigation

performed on the student helper, which were material facts that RISD failed to disclose to Plaintiffs.

75.     RISD had a duty to disclose these material facts to Plaintiffs and RISD knew Plaintiffs were ignorant of these facts and that they did not have an equal opportunity to discover such material facts.  RISD was silent when it had a duty to disclose, and by failing to disclose the facts, RISD intended to induce Plaintiffs to take some action or inaction, by allowing their minor children to participate in a program with older children who were not being monitored, without their knowledge or consent.  Plaintiffs relied on RISD's non-disclosure, and JANIE DOES 1-6 were injured as a result of this non-disclosure.

### D. NEGLIGENT SUPERVISION OF MINOR CHILD AGAINST MOM AND DAD DOE

76.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations in each of the previous paragraphs.

77.     MOM and DAD DOE are the legal guardians of Johnny Doe, a minor child. MOM and DAD DOE are liable for the sexual assault of JANIE DOES 1-6 by their ward, Johnny Doe, a minor child.  MOM and DAD DOE'S negligence, including, but not limited to their lack of reasonable supervision, control, and training contributed to the willful assaultive acts of their ward.

78.     MOM and DAD DOE knew, or alternatively, could, or shave known their ward had a tendency to act in a sexual manner and/or dangerous manner. They knew, or alternative, should have been able to see that Johnny Doe was capable of causing injury, and in particular the type of injury that their ward willfully inflicted upon JANIE DOES 1-6, as such these acts are reasonable attributable to MOM and DAD DOES's failure to exercise their parental/guardianship duties.

79.     Defendants, MOM and DAD DOE's negligence caused injuries to JANIE DOES 1-6, for which Plaintiffs seek damages in this case.

## VII.    ATTORNEY FEES

80.    Defendants' conduct as described in this complaint and the resulting damage and loss, has necessitated Plaintiffs in retaining the undersigned attorneys, therefore, Plaintiffs are entitled to recover from Defendants an additional sum to compensate for a reasonable fee for such attorneys' services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts. In this regard, Plaintiffs claim entitlement to attorneys' fees and costs under the fee- shifting provisions of 42 U.S.C. §1988.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that this Court grant the following relief:

a)    Injunctive relief in the form of a mandatory injunction requiring Defendant to properly train, instruct and supervise its personnel regarding allegations of sexual abuse at any of its schools;

b)    Compensatory damages in an amount to be proved at trial;

c)    Attorney fees under any law that provides for the recovery of attorney fees;

d)    Any further relief to which Plaintiffs may be entitled.

## IX.    REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial for all claims for which a jury trial is permitted by law.

DATED:    May 31st, 2023

Respectfully submitted,

**SIMON GREENSTONE PANATIER, PC**

_____

JEFFREY B. SIMON
State Bar No. 00788420
jsimon@sgptrial.com
CHARLES E. SOECHTING, JR.
State Bar No. 24044333
csoechting@sgptrial.com
JODEE L. NEIL
State Bar No. 24039848
jneil@sgptrial.com
IYMAN N. STRAWDER
State Bar No. 24103953
istrawder@sgptrial.com
1201 Elm Street, Suite 3400
Dallas, Texas 75270
Telephone:  (214) 276-7680
Facsimile:  (214) 276-7699

**ATTORNEYS FOR PLAINTIFFS**