## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JOHN AND JANE DOE 1 et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-01243-E |
| | § | |
| ROCKWALL INDEPENDENT SCHOOL | § | |
| DISTRICT et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are the following motions (i) Defendant Lindy Lewis's Motion to Dismiss Plaintiffs' First Amended Complaint, (ECF No. 22); (ii) Defendant Ashley Rankin's Motion to Dismiss Plaintiffs' First Amended Complaint, (ECF No. 24); and (iii) Defendant Rockwall Independent School District (RISD)'s Motion for Partial Dismissal of Plaintiffs' First Amended Complaint, (ECF No. 26). Each of these motions seek to dismiss Plaintiff Does' claims against Lewis, Rankin, and RISD, respectively. (*See* ECF Nos. 22; 24; 26). Having carefully considered the motions; the Parties' briefing; and the applicable law, for reasons that follow, the Court grants the motions to dismiss.

## I.   BACKGROUND

### A.  The Parties and Johnny Doe

RISD is a school district located in Rockwall, Texas. (*See* ECF No. 21 at 2). From January 2022 to April 2022, Plaintiff Janie Does attended school at Amy Parks-Heath Elementary School (APHES)—located within RISD. (ECF No. 21 at 6). During that time, Lewis served as principal

of APHES, and Rankin served as a kindergarten teacher at APHES for the Janie Does. (ECF No. 21 at 3-4). Johnny Doe attended a RISD middle-school as a sixth-grader. (*See* ECF No. 21).

### B. Helper Program(s) and Allegations of Sexual Assault

As pleaded, RISD has various mentoring programs wherein older students would help younger students—including "'Campus Buddies' and Peer Assistance Leadership Program." (ECF No. 21 at 5). Regarding one of these "helper programs," Plaintiffs allege:

> Throughout the 2021-2022 school year, some 6th graders at Amy Parks-Heath Elementary School, were bussed from Amy Parks-Heath to Cain Middle School for certain classes and then back again. As was known by the District, doing so created a "gap" in the students' schedules. In order to fill the gap, the Amy Parks-Heath administration, under the supervision of the Superintendent, decided to utilize these students as un-vetted, untrained and unsupervised RISD student workers. These student workers were assigned to help the vulnerable kindergarten children with reading or math. Specifically, the principal, Defendant LINDY LEWIS, "hired" these student workers, without going through the application process and screening. There was no structured protocol to make sure that the underaged student workers were trained or supervised, or that their employment complied with the Texas Education Code or the rules listed on the RISD website, nor were any attempts made to provide these student workers with any training or supervision.

(ECF No. 21 at 18). Johnny Doe was one of the sixth graders that was assigned to help the Janie Does—kindergarteners—at APHES for several months. (ECF No. 21 at 19-23). Plaintiffs assert Johnny Doe's mom or dad called APHES "to warn them about [Johnny Doe's] abnormal behavior at home towards his sister." (ECF No. 21 at 19). Plaintiffs assert APHES "was aware of at least one disciplinary action involving [Johnny Doe] being aggressive with another student." (ECF No. 21 at 19).

In April 2022, a kindergartener told his father that he witnessed an "older kid . . . touching his female kindergarten peers on their 'bottoms.'" (ECF No. 21 at 20). Rankin and the father discussed this allegation on a phone call; during the discussion the kindergartener identified the older kid as "the kid who helps us with math." (ECF No. 21 at 20). Plaintiffs assert the

kindergartener did not tell Rankin of this because of her "'Mickey Mouse' policy whereby she instructed the children not to bother her while she was wearing her 'Mickey Mouse' ears." (ECF No. 21 at 20).

> Plaintiff alleges Rankin next investigated the allegation on the following day:

> Rankin approached the [kindergartener] who reported to his father and he confirmed the events again to her. Rankin spoke to the kindergartner who had been reportedly touched and asked her what had happened. She reluctantly confirmed that she had been touched in her genital area by Johnny Doe. She said it also happened to her friend, who Rankin then spoke to and confirmed as another victim.

> Then the children reported two more little girls who had been touched by Johnny Doe. . . . [Rankin] called . . . [Lewis] and the assistant principal but they were unavailable, and remained unavailable for most of the morning, so Rankin left a message of urgency with Allison Green around 8am, then contacted the School Counselor, Kristen Holder around 9:15 a.m.

> Kristen Holder knew this particular 6th grade student worker. She had noticed over several months a behavioral change in him where he became increasing aggressive with other students to on the school bus. RANKIN recalls Ms. Holder telling her that JOHNNY DOE'S mother had even called her about his disturbing behavior changes towards his female sibling at home . [sic]

(ECF No. 21 at 21-22). "Mark Speck, the Chief Human Resources Director and Title IX Officer for RISD, directed LINDY LEWIS and Kristen Holder to interview JOHNNY DOE[,] and "Johnny Doe confirmed generally that he had been touching the [Janie Does]." (ECF No. 21 at 22-23) (capitalizations in original).

### C. Procedural History

Plaintiffs initiated this litigation on May 31, 2023. (ECF No. 1). As amended, Plaintiffs allege three counts against Defendants. (*See* ECF No. 21 at 28-44). As to Defendants Lewis, Rankin, and RISD, Plaintiffs assert violation(s) of 42 U.S.C. § 1983—based on a substantive due process violation of the Fourteenth Amendment. (ECF No. 21 at 28-36). As to Defendant RISD, Plaintiffs assert a violation of 20 U.S.C. § 1681—Title IX. (ECF No. 21 at 36-41). As to

Defendants Mom and Dad Doe, Plaintiffs assert a claim in tort of "negligent supervision." (ECF No. 21 at 42).

Lewis, Rankin, and RISD have each moved to dismiss the § 1983 claims. (ECF Nos. 22; 24; 26). Lewis and Rankin both assert an entitlement to qualified immunity. (ECF Nos. 22; 24). RISD asserts Plaintiffs cannot establish a violation of Plaintiffs' constitutional rights at the hands of a "state actor" or otherwise establish municipal liability under § 1983. (ECF No. 26 at 2).[1] Plaintiffs have responded to each motion to dismiss, (ECF Nos. 30; 31; 32), and Defendants have replied, (ECF Nos. 33; 34; 35). Having been fully briefed, the Court enters its determinations hereunder.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont*

---

[1] RISD has not moved for dismissal of Plaintiffs' Title IX claim, at this time. (*See generally* ECF No. 26).

*Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court will not accept as true "legal conclusions couched as factual allegations." *Iqbal*, 556 U.S. at 678. "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III.   ANALYSIS

To state a claim under § 1983, a Plaintiff must allege: (i) "some person has deprived him of a federal right" guaranteed by the United States Constitution or federal law; and (ii) "the person who deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The existence of a constitutional violation is a "threshold" requirement in any § 1983 claim. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability[.]" *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (emphasis in original).

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). A claim under the Fourteenth Amendment may proceed under substantive due process or procedural due process. *See generally Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013). Here, Plaintiffs have asserted only substantive due process claims. (*See* ECF No. 21). "This substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d

443, 450 (5th Cir. 1994) (internal quotations omitted). Here, it is undisputed "that schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Taylor*, 15 F.3d at 445.

Having identified a liberty interest, the Court next addresses whether "governmental action" resulted in a deprivation of that interest. *See Rege*, 627 F.3d at 544. The Court first addresses whether Johnny Doe was a state actor because much of the Parties' briefing relates to that issue. Second, the Court addresses Plaintiffs have pleaded a cognizable claim against Lewis and Rankin that overcomes qualified immunity. Last, the Court addresses whether Plaintiffs have pleaded a cognizable § 1983 claim against RISD.

## A. Whether Johnny Doe Was a State Actor

The core of this dispute relates to whether Johnny Doe acted under color of law as a state actor—whether Johnny Doe's actions constituted governmental action that resulted in a deprivation of the Janie Does' liberty interest in their bodily integrity. *See Rege*, 627 F.3d at 544; *Taylor*, 15 F.3d at 445. Here, it is undisputed that neither Lewis, Rankin, nor any other school employee sexually abused the Janie Does. (*See* ECF No. 21). However, Plaintiffs assert that because Johnny Doe volunteered at APHES, his volunteering converted him into a state actor that attached liability to Defendants for his alleged sexual abuse. (ECF No. 21 at 30-31; *see generally* ECF Nos. 30; 31; 32). Defendants assert Johnny Doe was not a state actor. (*See* ECF Nos. 23; 25; 27; 33; 34; 35).

Plaintiffs first argue Johnny Doe was "was akin to that of a volunteer" under the Texas Education Code. (ECF No. 30 at 21-22).[2] Plaintiffs refer the Court to Texas Education Code

---

[2] As the Defendants each filed separate motions to dismiss and some issues overlap between the filings, the Court has made effort to refer to the Parties' arguments as they were first-filed.

§ 22.053, which provides, in pertinent part:

> (a) A volunteer who is serving as a direct service volunteer of a school district is immune from civil liability to the same extent as a professional employee of a school district under Section 22.0511.

> (b) In this section, "volunteer" means a person providing services for or on behalf of a school district, on the premises of the district or at a school-sponsored or school-related activity on or off school property, who does not receive compensation in excess of reimbursement for expenses.

Tex. Educ. Code Ann. § 22.053(a-b). As pleaded, Plaintiffs' Amended Complaint contains no facts as to whether Johnny Doe received compensation. Nevertheless, Plaintiffs argue "[b]y providing volunteers the same immunity as educators, the Texas Legislature has demonstrated its intent that classroom volunteers like Johnny Doe be considered state actors." (ECF No. 31 at 19). The Court disagrees.

Under the rule(s) of statutory interpretation,[3] no language in Texas Education Code § 22.053 converts "volunteers"—as defined—into state actors for the purpose of liability. *See* Tex. Educ. Code § 22.053(a-b). To the contrary, the express language of the statute *limits* civil liability for such volunteers. Tex. Educ. Code § 22.053(a-b). Plaintiffs refer the Court to a footnote in *Cavazos v. Edgewood Independent School District* to support their assertion that school volunteers are state actors under Texas Education Code § 22.053(a). 400 F. Supp. 2d 948, 956 n.7 (W.D. Tex. 2005); (*see* ECF No. 31 at 19). However, (i) the *Cavazos* Court merely discussed—in dicta and hypothetical—that a student's parent "could be considered a state actor, either through her actions or through her classification as a 'School District Volunteer;' (ii) the *Cavazos* Court did not fully address or determine whether the student's parent was a state actor; and (iii) the *Cavazos* Court's

---

[3] As instructed by the Supreme Court: "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).

determination(s) are not precedential on this Court. *See generally Cavazos*, 400 F. Supp. 2d at 956 n.7.

Plaintiffs next argue Johnny Doe was a state actor because his volunteering constituted performance of a traditional, exclusive public function—a state and municipal function—when he mentored kindergarteners as a part of the helper program. (ECF No. 30 at 22-23). The Supreme Court has explained that:

> a private entity can qualify as a state actor in a few limited circumstances—including, for example, **(i) when the private entity performs a traditional, exclusive public function, see,** ***e.g., Jackson*, 419 U.S. at 352–354, 95 S.Ct. 449**[]

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (emphasis added in bold).

The Supreme Court has provided examples of powers traditionally reserved to the state:

> We have, of course, found state action present in the exercise by a private entity of powers **traditionally exclusively reserved to the State**. See, e.g., Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) (**election**); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (**election**); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (**company town**); Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (**municipal park**).

*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Plaintiffs refer the Court to *Flagg Brothers, Incorporated v. Brooks*—a case about a warehouseman's proposed private sale of goods entrusted to him for storage as permitted by the New York Uniform Commercial Code—in which the Supreme Court explained that:

> there are a number of state and municipal functions . . . which have been administered with a greater degree of **exclusivity** by States and municipalities than has the function of so-called "dispute resolution." **Among these are such functions as education**[.]

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 163 (1978) (emphasis added in bold). *Flagg* did not specifically address state, municipal, or governmental functions of the state of Texas. *See generally Flagg Bros.*, 436 U.S. at 163. The State of Texas enumerates its governmental functions in Texas Civil Practice and Remedies Code § 101.0215 as follows:

(a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

(1) police and fire protection and control;
(2) health and sanitation services;
(3) street construction and design;
(4) bridge construction and maintenance and street maintenance;
(5) cemeteries and cemetery care;
(6) garbage and solid waste removal, collection, and disposal;
(7) establishment and maintenance of jails;
(8) hospitals;
(9) sanitary and storm sewers;
(10) airports, including when used for space flight activities as defined by Section 100A.001;
(11) waterworks;
(12) repair garages;
(13) parks and zoos;
(14) museums;
(15) libraries and library maintenance;
(16) civic, convention centers, or coliseums;
(17) community, neighborhood, or senior citizen centers;
(18) operation of emergency ambulance service;
(19) dams and reservoirs;
(20) warning signals;
(21) regulation of traffic;
(22) transportation systems;
(23) recreational facilities, including but not limited to swimming pools, beaches, and marinas;
(24) vehicle and motor driven equipment maintenance;
(25) parking facilities;
(26) tax collection;
(27) firework displays;
(28) building codes and inspection;
(29) zoning, planning, and plat approval;
(30) engineering functions;
(31) maintenance of traffic signals, signs, and hazards;
(32) water and sewer service;
(33) animal control;
(34) community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code;

(35) latchkey programs conducted exclusively on a school campus under an interlocal agreement with the school district in which the school campus is located; and

(36) enforcement of land use restrictions under Subchapter E, Chapter 212, Local Government Code.

(b) This chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality, including but not limited to:

(1) the operation and maintenance of a public utility;
(2) amusements owned and operated by the municipality; and
(3) any activity that is abnormally dangerous or ultrahazardous.

Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a-b). As listed above, the provision of education; schooling; or mentorship are not expressly included as either a governmental function or a proprietary function of Texas. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a-b). Plaintiffs provide no other authority as to how Johnny Doe's mentoring of kindergarteners as a part of a helper program at APHES constituted performance of a traditional, exclusive public function—such that Johnny Doe became a state actor. *See Halleck*, 587 U.S. at 809. The Court has found no such supporting authority. The Court determines Johnny Doe was not a state actor.

**B.  Qualified Immunity, Lewis, and Rankin**

"Qualified immunity shields government officials performing discretionary functions from liability as well as from suit." *DeLeon v. City of Dallas*, 141 Fed. Appx. 258, 261 (5th Cir. 2005). "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Qualified immunity gives

government officials breathing room to make reasonable[,] but mistaken judgments[.]" *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (quoting *Ashcroft*, 563 U.S. at 743) (internal quotation marks omitted). A plaintiff seeking to overcome qualified immunity must plead facts: "**(1)** that the official violated a statutory or constitutional right, and **(2)** that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added in bold). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal citation omitted). The Fifth Circuit further explained:

> The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* at 236–37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994).

*Brown*, 623 F.3d at 253.[4] Additionally, "[i]f the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown*, 623 F.3d at 253 (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

---

[4] Regarding whether a right was "clearly established," "[t]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (internal quotation omitted).

i.      *Whether Lewis is Entitled to Qualified Immunity or Subject to Other Liability*

Lewis first argues that she did not violate a statutory or constitutional right because a non-state actor—Johnny Doe—committed the alleged sexual abuse of the Janie Does. (ECF No. 23 at 13-14). In response, Plaintiffs assert Johnny Doe was a state actor, a theory the Court has rejected above.

In *Doe ex rel. Magee v. Covington County School District ex rel. Keys*, plaintiffs sought to hold a school district and several school employees liable—under, *inter alia*, § 1983—for the sexual molestation of a student after the school permitted a man to sign out a student when (i) the man signed the student out as the student's father but (ii) the man allegedly bore no relation to the student. 675 F.3d 849, 852-55 (5th Cir. 2012). In *Doe ex rel. Magee*, the Fifth Circuit discussed the application of *Doe v. Taylor* in footnote:

> ***Jane does not, and indeed cannot, state a substantive due process claim based upon the sexual molestation itself***. Although we recognized a constitutional right to bodily integrity in *Doe v. Taylor Independent School District,* 15 F.3d 443 (5th Cir.1994) (en banc), we found that this right is "necessarily violated when a *state actor* sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment." *Id.* at 451–52 (emphasis added). ***Taylor is inapplicable here because the actual violation of Jane's bodily integrity was caused by Keyes, a non-state actor.***

675 F.3d at 855 n. 3 (emphasis added in bold italics). Thus, the Fifth Circuit has explained that a plaintiff cannot state a substantive due process claim based upon sexual abuse of a student against a school district or school employees when the "actual violation of [the student's] bodily integrity was caused by . . . a non-state actor." *Doe ex rel. Magee*, 675 F.3d at 855 n. 3. Here, as determined above, Johnny Doe was a non-state actor who, as alleged, violated the bodily integrity of the Janie Does. Similar to *Doe ex rel. Magee*, Plaintiffs cannot state a substantive due process claim based upon the sexual abuse itself against these Defendants. Accordingly, the Court must conclude

Plaintiffs have not have not plead facts that Lewis violated a statutory or constitutional right of Plaintiffs regarding Johnny Doe's alleged sexual abuse.

Lewis next argues that Plaintiffs' allegation(s) against Lewis of "supervisory failures" also fail to state a claim that overcomes qualified immunity for the same reason(s) as above. (ECF No. 23 at 14). In response, Plaintiffs argue that "Defendant may also be liable for a failure to supervise that amounts to gross negligence or deliberate indifference." (ECF No. 30 at 26-28).

In *Doe v. Taylor*, the Fifth Circuit explained a test for personal liability for a supervisory school official under certain circumstances:

> A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:
> **(1)** the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
> **(2)** the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
> **(3)** such failure caused a constitutional injury to the student.

15 F.3d at 454 (emphasis added in bold). At the outset, the Court addresses the issue of whether Johnny Doe was a "subordinate" of Lewis. As determined above, Johnny Doe was a non-state actor, student. Plaintiffs' pleadings do not contain facts that show Johnny Doe was a subordinate of Lewis. (*See* ECF No. 21). Plaintiffs offer no authority that a non-state actor, student who volunteered in a helper program at a school converted that non-state actor, student into a subordinate of the school principal, and the Court has found none. Thus, the Court determines Johnny Doe was not a subordinate of Lewis. Under the *Doe v. Taylor* test, Lewis cannot be held personally liable for Johnny Doe's acts because Johnny Doe was not a subordinate of Lewis. 15 F.3d at 454. Assuming *arguendo* Johnny Doe was a subordinate of Lewis, Plaintiffs could still not hold Lewis personally liable because (i) no pleading shows Lewis learned of Johnny Doe's acts

until after Rankin learned of the same in April 2022; (ii) Lewis took action on the following day

to investigate the allegation; and (iii) there are no allegations of abuse, thereafter—indicating that,

*inter alia*, the alleged sexual abuse stopped. *Taylor*, 15 F.3d at 454. As pleaded, these facts show

Lewis did not demonstrate deliberate indifference toward the constitutional rights of the students

because Lewis took action necessary to stop the abuse. The Court concludes Plaintiffs fail to meet

the *Doe v. Taylor* test for holding Lewis personally liable.

Plaintiffs nevertheless argue that Lewis was not acting incident to or within the scope of

her duties—that Lewis's acts were not a part of her discretionary functions. Plaintiffs assert instead

that Lewis violated a "mandatory rule"—"Texas Education Code § 33.013 [sic]." *See generally*

Tex. Educ. Code § 33.913.[5] However, there are two problems with Plaintiffs' argument. First, the

pleadings do not indicate the helper program Johnny Doe participated in was a "Tutoring Program"

under Texas Education Code § 33.913; the pleadings do not indicate (i) that Johnny Doe's

volunteering was a part of any formal helper program that RISD instituted or (ii) that Johnny Doe

applied for the same. (*See generally* ECF No. 21). Second, to the extent Texas Education Code

§ 33.913 requires any "mandatory" or ministerial activity, no part of that statute mentions any

action required by the principal of a school like Lewis. *See* Tex. Educ. Code § 33.913.[6] In terms

of school employees, Texas Education Code § 33.913 only expressly provides duties for "[t]he

superintendent or chief executive officer of each school district or open-enrollment charter school

or the person designated by the superintendent or chief executive officer[.]" Tex. Educ. Code

§ 33.913(c). Here, no pleading discusses Lewis's "designation" in relation to any tutoring program.

---

[5] Texas Education Code § 33.013, to which Plaintiffs refer, does not exist. However, the Texas Education Code's "Miscellaneous Provisions" discuss tutoring programs under § 33.913. *See* Tex. Educ. Code 33.913.

[6] The Court offers no determination of whether any portion of Texas Education Code § 33.913 involves "mandatory" or ministerial duty.

---

*See* Tex. Educ. Code § 33.913(c). No pleading or authority otherwise supports Plaintiffs' argument that the helper program that Johnny Doe participated in involved mandatory or ministerial duties on Lewis's part. (*See* ECF No. 21). Otherwise, the pleadings show Lewis acted within her discretionary functions as principal. (*See* ECF No. 21). As pleaded, the decision to for APHES or RISD implement a mentorship or tutoring program appears to be an academic decision involving judgment. The Supreme Court has explained:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment.[] **Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.**

*Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985) (internal footnote omitted) (emphasis added in bold). Here, no pleading of fact nor briefing demonstrates the helper program(s) or other mentorship or tutoring program as a "substantial departure from accepted academic norms."

Plaintiffs next argue Lewis had a duty to protect the Janie Does from Johnny Doe as Johnny Doe had a special relationship with Defendants. (ECF No. 30 at 29-32). Plaintiffs refer the Court to *Walton v. Alexander*, wherein the Fifth Circuit explained the special relationship exception for permitting imposition of § 1983 liability on the state:

> We think it is important to apply *DeShaney* as it is written. *DeShaney* emphasizes— as we emphasize at the very outset of this opinion—that extending the Due Process Clause to impose on the state the obligation to defend and to pay for the acts of non-state third parties is a burden not supported by the text or history of the Clause, nor by general principles of constitutional jurisprudence. Such an expansion of the state's liability for acts of third parties only can make constitutional sense—that is, holding a government accountable and liable for its official actions—when the state has effectively taken the plaintiff's liberty under terms that provide no realistic means of voluntarily terminating the state's custody *and* which thus deprives the plaintiff of the ability or opportunity to provide for his own care and safety. It is under such extreme circumstances that the state itself, by its affirmative act and pursuant to its own will, has effectively used its power to force a "special relationship," with respect to which it assumes a certain liability.

*Walton v. Alexander*, 44 F.3d 1297, 1305 (5th Cir. 1995). Plaintiff acknowledges that courts construe such special relationships "very narrowly"—next referring the Court to *DeShaney v. Winnebago County Dept of Social Services*:

> [W]hen the State takes a person into its custody **and holds him there against his will**, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. See *Youngberg v. Romeo, supra,* 457 U.S., at 317, 102 S.Ct., at 2458 ("When a person is institutionalized—and wholly dependent on the State[,] ... a duty to provide certain services and care does exist").[] The rationale for this principle is simple enough: ***when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause***. See *Estelle v. Gamble, supra,* 429 U.S., at 103–104, 97 S.Ct., at 290–291; *Youngberg v. Romeo, supra,* 457 U.S., at 315–316, 102 S.Ct., at 2457–2458. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, ***but from the limitation which it has imposed on his freedom to act on his own behalf.*** See *Estelle v. Gamble, supra,* 429 U.S., at 103, 97 S.Ct., at 290 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met").

489 U.S. 189, 199–200 (1989). Plaintiffs appear to request the Court to enter a determination contrary to Fifth Circuit's in *Doe ex rel. Magee* that:

> a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors. **Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody.** *See DeShaney,* 489 U.S. at 199–200, 109 S.Ct. 998; *Griffith,* 899 F.2d at 1439. **Without a special relationship, a public school has no *constitutional* duty to ensure that its students are safe from private violence.**

675 F.3d at 857–58.

The Court declines Plaintiffs' invitation and rejects their theory that Johnny Doe had a special relationship with Defendants. In accordance with *Doe ex rel. Magee*, Johnny Doe—a student of RISD—had no special relationship with Defendants. 675 F.3d at 857–58. Lewis had no constitutional duty to ensure that her students were safe from private violence. *See Doe ex rel.*

*Magee*, 675 F.3d at 857–58. Furthermore, no pleading of fact shows that Lewis or the other Defendant(s) restrained any student—including the Janie Does—in a manner that held them against their will(s) or rendered them unable to care for themselves. *See DeShaney*, 489 U.S. 199–200; *Walton*, 44 F.3d at 1305. The Court determines that, as pleaded, Johnny Doe had no special relationship with Lewis that would create personal liability for Lewis. The Court concludes Lewis is entitled to qualified immunity as a matter of law.

Plaintiffs appear to argue that Lewis's permission of an older student to mentor a younger student on campus violates a clearly established constitutional right—students' liberty interest in their bodily integrity. Assuming *arguendo* Lewis gave such permission, Plaintiffs direct the Court to no authority that a reasonable official would understand that those acts—permitting an older student to mentor a younger student on campus—violates that right. *Brown*, 623 F3d. at 253. Under the circumstances that confronted Lewis, Plaintiffs have failed to allege facts sufficient to demonstrate that no reasonable officer could have believed her actions were proper. *Brown*, 623 F3d. at 253. The Court GRANTS Lewis's motion to dismiss.

### ii.     *Whether Rankin is Entitled to Qualified Immunity or Subject to Other Liability*

The Parties' briefing as to Rankin is substantively similar—if not identical—to the briefing as to Lewis. (*See* ECF Nos. 25; 31; 34). Thus, the Court reaches the same result(s) with Rankin as it has above with Lewis. Since Johnny Doe was not a state actor, Plaintiffs cannot state a substantive due process claim based upon the sexual abuse itself against Rankin. Plaintiffs have not have not plead facts that Rankin violated a statutory or constitutional right of Plaintiffs regarding Johnny Doe's alleged sexual abuse. For the same reasons as above, Plaintiffs fail to meet the *Doe v. Taylor* test for holding Rankin personally liable. 15 F.3d at 454. Plaintiffs do not challenge whether Rankin was acting within her discretionary function(s). And last, the Court

rejects Plaintiffs' argument that Johnny Doe held a special relationship with any of the Defendants. The Court pretermits further discussion as duplicative or cumulative of the above.

Again, Plaintiffs direct the Court to no authority that a reasonable official would understand that those acts—permitting an older student to mentor a younger student on campus—violates any constitutional right. *Brown*, 623 F3d. at 253. Under the circumstances that confronted Rankin, Plaintiffs have failed to allege facts sufficient to demonstrate that no reasonable officer could have believed her actions were proper. *Brown*, 623 F3d. at 253. The Court concludes Rankin is entitled to qualified immunity as a matter of law. The Court GRANTS Rankin's motion to dismiss.

### C. Section 1983 Claims, RISD and Municipal Liability

"Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose "moving force" is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski*, 237 F.3d at 578; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). As the Fifth Circuit has stated:

> The policymaker must have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Municipal liability cannot be sustained under a theory of *respondeat superior. Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Piotrowski*, 237 F.3d at 578. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. **Therefore to sustain liability under § 1983, the [Plaintiff] must point to more than the actions of a [school district] employee, [Plaintiff] must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation.**

*Rivera*, 349 F.3d at 247 (emphasis added in bold). The Supreme Court has explained that a governmental entity—such as RISD—may not be held liable under § 1983 "unless action pursuant

to official municipal policy of some nature *caused* a constitutional tort." *Monell*, 436 U.S. at 691,

98 S.Ct. 2018 (emphasis added). In discussing *Monell* the Supreme Court has further explained:

> [A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link between the municipal action and the deprivation of federal rights.* Pp. 1387–1388.

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. at 397, 404 (1997) (emphasis

added). The Court next discusses (i) RISD's policymaker; (ii) RISD's according policies; (iii)

RISD's acclaimed deliberate indifference; and (iv) RISD's failure-to-train or failure-to-supervise.

### i.    *RISD's Policymaker*

"[W]hether a particular official has final policymaking authority is a question of state

law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotations omitted).

Under Texas Law, an independent school district is governed by a board of trustees who "as a

body corporate have the exclusive power and duty to govern and oversee the management of the

public schools of the district." Tex. Educ. Code § 11.151(b). Here, it is undisputed that the RISD

Board is the final policymaking authority. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245

(5th Cir. 1993) ("Texas law is clear that final policymaking authority in an independent school

district, such as the DISD, rests with the district's board of trustees."). The Court next addresses

Plaintiffs' acclaimed constitutional torts in the context of official policy and deliberate

indifference.

### ii.    *Affirmative Official Policy*

The official policy requirement for municipal liability can be shown by

> "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by ... an official to whom the lawmakers have delegated policy-making authority" or through a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam).

Plaintiffs first argue RISD had an official policy that "knowingly tolerated the environment that enabled Johnny Doe's abuse.[7] [RISD] knew unvetted, untrained, and unqualified students were being provided access to vulnerable kindergarteners." (ECF No. 32 at 27) (footnote added). Plaintiffs direct the Court to no affirmative policy regarding the helper program that Johnny Doe participated in. (*See* ECF No. 21). Plaintiffs aver "access to students is limited by Texas law to only those who meet specific criteria," but offer no supporting authority. (ECF No. 32 at 27). The Court has found no corresponding authority under Texas law that limits students' "access" to one-another.

In asserting an official policy, Plaintiffs argue RISD was aware of Rankin's "Mickey Mouse" ears policy, but no factual allegation in Plaintiffs' pleading(s) support the same. (ECF No. 32 at 27). That is, Plaintiffs argue the "Mickey Mouse" ears policy was an official policy of RISD. However, absent some delegation from the RISD board of policy-making authority, neither teachers nor principals have final policy-making authority in a school district. *See Jett*, 7 F.3d at 1244-45 (explaining that "the Education Code gives the board of trustees not only what might be described as a form of legislative power over the district they serve—the power to make "rules, regulations and by-laws"—but also a form of executive power, the power to "control" and the "exclusive" power to "manage" as well as to "govern" the district."). No pleading reflects RISD's delegation of policy-making authority. (*See* ECF No. 21). Thus, the Court concludes Rankin's

---

[7] Before briefing on the elements for municipal liability, Plaintiffs first allege Johnny Doe was a state actor; performed an exclusive state function; or shared some special relationship with RISD. (ECF No. 32 at 20-26). The Court has rejected each of these theories, above. The Court pretermits repeating such analysis as the same applies to RISD as to Rankin and Lewis.

---

"Mickey Mouse" ears policy did not constitute an "official policy" for the purpose of municipal liability against RISD. *See Jett*, 7 F.3d at 1244-45.

Plaintiffs argue RISD knew Johnny Doe was "dangerous," but no factual allegation in Plaintiffs' pleading(s) support the same. Plaintiffs argue RISD had some "customary laxity" as a policy that "permitted" Johnny Doe's alleged sexual abuse, but no factual allegation in Plaintiffs' pleading(s) support the same. Plaintiffs argue that RISD "'officially sanctioned' Johnny Doe's sexual predation by enabling it, tolerating it, and concealing it," but no factual allegation in Plaintiff's pleading(s) support the same. To the contrary, no factual allegation from Plaintiffs' pleadings shows anyone at RISD—including the RISD Board—knew of Johnny Doe's actions, as alleged, until April 2022. (*See* ECF No. 21). The following factual allegations show RISD, Rankin, and Lewis took steps to remedy the alleged conduct immediately after notice of the alleged sexual abuse. (*See* ECF No. 21). As plead, Plaintiffs fail to show an affirmative policy that demonstrates a direct causal link between the municipal action and a deprivation of federal rights. *Brown*, 520 U.S. at 404. As discussed above, Plaintiffs cannot state a substantive due process claim based upon the sexual abuse itself against RISD. *See Doe ex rel. Magee*, 675 F.3d at 855 n. 3.

### iii.    *Deliberate Indifference*

Nevertheless, Plaintiffs argue that RISD's Board—as policymaker—failed to act affirmatively to protect the Janie Does and therefore acted with "sufficient culpability" with regard to Johnny Doe's alleged sexual abuse. (ECF No. 32 at 27). In instances where the policymaker "fails to act affirmatively at all"—where there is no policy—the "official policy" requirement may be met "if the need to take some action to control the agents of the local governmental entity 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately

---

MEMORANDUM OPINION AND ORDER                                   Page **21** of **26**

indifferent to the need.'" *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). In other words, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequence[ ] of not adopting a policy will be a deprivation of constitutional rights." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

"Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'" *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 579). To establish deliberate indifference, Plaintiffs must show that RISD had "actual or constructive notice" that a particular omission in policy would cause its "employees to violate citizens' constitutional rights" and that it still chose to omit that policy. *See Porter*, 659 F.3d at 447 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Connick*, 563 U.S. at 62, 131 S.Ct. 1350 (A "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the [defendant] itself to violate the Constitution.'") (internal citation omitted). A plaintiff may show deliberate indifference in either of two ways. "First, a plaintiff may demonstrate 'that a municipality had notice of a pattern of similar violations.'" *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017) (quoting *Kitchen v. Dall. Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014)) (failure-to-train case). "Second, a plaintiff may demonstrate liability based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure [to promulgate a policy]." *Davidson*, 848 F.3d at 397 (internal quotation marks omitted) (quoting *Kitchen*, 759 F.3d at 484).

With regard to the helper program(s) and Johnny Doe's participation in the same, Plaintiffs have failed to plead factual allegations that show RISD was deliberately indifferent. *See Burge*, 187 F.3d at 471. Johnny Doe is not an employee of RISD nor any other type of state-actor. No factual allegation(s) suggest RISD had actual or constructive notice that any omission in any policy alleged would cause its employees to violate the Janie Does' liberty interest in their bodily integrity. No factual allegation shows RISD had notice of a pattern of similar violations. Under these circumstances, Plaintiffs' acclaimed constitutional violation was not the highly predictable consequence of a particular failure to promulgate a policy. *Davidson*, 848 F.3d at 397-98. For those reasons, the Court concludes Plaintiffs have not met their burden as to the official policy element of their municipal liability claim against RISD.

iv.    *Failure to Train and Failure to Supervise*

Plaintiffs assert failure-to-train and failure-to-supervise theories of liability under § 1983. (*See* ECF No. 21). "[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton*, 489 U.S. at 387. To succeed on a failure-to-train or failure-to-supervise claim, a plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate, (2) a causal link between such failure and the violation of plaintiff's constitutional rights, and (3) such failure amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (brackets and citation omitted). "[W]hen [] policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens'

constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61.

Similar to the inadequate policy cases discussed above, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). In the absence of a pattern of similar violations, a plaintiff may sometimes "establish deliberate indifference through the single-incident exception." *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). To fit within this "extremely narrow" exception, the plaintiff must show "that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Valle*, 613 F.3d at 549 (emphasis omitted). "For a violation to be 'highly predictable,' the municipality 'must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Hutcheson*, 994 F.3d at 482-83 (quoting *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624-25 (5th Cir. 2018)). "The single-incident exception 'is generally reserved for those cases in which the government actor was provided no training whatsoever.'" *Hutcheson*, 994 F.3d at 483 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)). Similarly, to establish liability for a failure to supervise, "it must have been obvious that the highly predictable consequence of not [supervising the employees] was that they would" commit the specific constitutional violation alleged. *Peterson*, 588 F.3d at 849 (internal quotation marks and citation omitted).

At the outset, the Court acknowledges that Plaintiffs' failure-to-train and failure-to-supervise allegations are unclear as (i) the corresponding pleadings are largely conclusory; (ii) the pleading and briefing, in large part, does not differentiate as to *whom* RISD failed to train or

supervise; and (iii) the pleading and briefing largely proceed under the rejected assumption that Johnny Doe was a state actor. Assuming *arguendo* that the training procedures or supervision of employees was inadequate, Plaintiffs' fail to plead factual allegations that show any causal link between such failures in training and a deprivation of Plaintiffs' constitutional rights.

Here, the alleged sexual abuse occurred at the hands of a non-state actor—Johnny Doe. *See Doe ex rel. Magee*, 675 F.3d at 855 n. 3. Plaintiffs repeatedly assert that Rankin or Lewis were not provided training on the signs of sexual abuse or "what to happen in the event of such abuse," (ECF No. 31), but—as conceded—RISD, Lewis, and Rankin first learned of Johnny Doe's alleged sexual abuse in April 2022 and took immediate action, thereafter. Plaintiffs' pleadings do not discuss more than a single instance of the lack of training or supervision that caused a violation of constitutional rights. *See Thompson*, 245 F.3d at 459. As determined above, no violation of constitutional rights occurred. Notwithstanding, Plaintiffs have not established deliberate indifference. On municipal liability against RISD, a clear constitutional duty was not implicated with regard to a student—who is not a state actor—who allegedly sexually abuses another student. As pleaded, the circumstances herein are not "recurrent situations that a particular employee is certain to face." *Hutcheson*, 994 F.3d at 482-83. As pleaded, the alleged sexual abuse of the Janie Does at the hands of another student was not a "highly predictable" consequence of a failure to train. *See Valle*, 613 F.3d at 549.

Here, there is no causal link between RISD's failure to adequately train its principals, teachers, or other employees and any violation of Plaintiffs' constitutional rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395. Plaintiffs have failed to plead an actionable failure-to-train or failure-to-supervise claim for municipal liability against RISD. The Court determines that

---

MEMORANDUM OPINION AND ORDER

Plaintiffs cannot establish municipal liability against RISD. The Court GRANTS RISD's motion to dismiss.

## IV.   CONCLUSION

For the reasons discussed hereabove, the Court GRANTS Defendants' motions to dismiss—thereby dismissing (i) all claims against Defendants Lewis and Rankin and (ii) the constitutional claims against RISD. Plaintiffs Title IX claim(s) against RISD and tort claim against Mom and Dad Doe remain.

**SO ORDERED.**

26th day of April, 2024.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE